# Richmond.

## MONROE GARDNER v. COMMONWEALTH.

### November 16, 1922.

1. CRIMINAL LAW—*Order of Proof—Rebuttal Testimony.*—Where the Commonwealth had made a *prima facie* case against accused, and the defense in reply introduced evidence tending to overturn such *prima facie* case, testimony introduced by the Commonwealth merely to controvert the truth of the testimony introduced by the accused, and not going beyond the scope of that testimony, is properly admissible in evidence in rebuttal.

2. CRIMINAL LAW—*Order of Proof—Rebuttal Testimony—Case at Bar.*—In the instant case, a prosecution for transporting liquor, the Commonwealth proved by a Federal prohibition officer that this officer found the accused and two others each sitting beside a sack containing whiskey, thus making a *prima facie* case against accused. Accused and one of his companions testified that they had nothing to do with bringing the sacks of whiskey to the place where they were found; that they saw a man running from the place where the sacks were found, and coming up to that place, sat down beside the sacks without examining them or knowing what the sacks contained. Whereupon, over the objection of the accused, the Commonwealth introduced the other companion of accused in rebuttal, who testified that the three carried the whiskey to the place at which they were arrested, and that the story told by accused and his other companion was a lie, which they concocted among themselves and agreed to tell after their arrest.

   *Held:* That the testimony of this witness was properly admissible in rebuttal.

3. CRIMINAL LAW—*Order of Proof—Testimony of an Accomplice Introduced by the Commonwealth after the Testimony for the Defense—Case at Bar.*—In the instant case at the time the Commonwealth rested, it did not know that it could obtain the testimony of an accomplice. It was not until the accused had entered upon the introduction of evidence in defense that the Commonwealth was informed by this accomplice that the statements of accused and another accomplice were false and concocted, and that he would no longer adhere to this story, but would testify to the truth.

*Held:* That, such being the case, there was no error in permitting this accomplice to testify after the defense had rested.

4. CRIMINAL LAW—*Witnesses—Surprise—Verdict of Jury Determines Conflicts in Evidence.*—In the instant case, after the defense rested, the Commonwealth was permitted to introduce an accomplice, who testified that the evidence of accused and another witness for the defense was false. If the accused had been taken by surprise by this testimony at that stage of the trial, and had reasonable expectation of obtaining witnesses to discredit it, he should have asked a reasonable delay of the trial. The accused, however, did not take this course, but contented himself with denying the truth of the accomplice's testimony. The verdict of conviction determined the conflict between the Commonwealth's testimony and that of the defense in favor of the Commonwealth. Therefore, the accomplice's testimony must be taken as true, and it was sufficient to support a verdict of guilty.

Error to a judgment of the Circuit Court of Wise county.

*Affirmed.*

The indictment in this case, in addition to the omnibus count, contains a count charging the accused with the unlawful transportation of liquor within the State. There was a trial by jury, and a verdict finding the accused guilty and fixing as his punishment the payment of a fine of $100 and sixty days confinement in jail. The judgment under review was entered accordingly. The accused assigns error.

There are only two assignments of error—one that the trial court erred in permitting the Commonwealth to introduce the testimony of one J. M. Lipps in rebuttal, and the other that the court erred in refusing to set aside the verdict because such testimony could not be considered as properly in evidence, and that without such testimony there was no evidence in the case to support the verdict of the jury.

The Commonwealth introduced as its evidence in chief the testimony of a Federal prohibition officer, who

testified, in substance, that he came upon the accused and two others, the said Lipps and one Worley Dean, by the side of a path, in the woods, on the top of a certain mountain, each sitting "just beside" a separate sack, which looked "as though (they) had been carried separate," whereupon he arrested all three of them. That whiskey was found in each of the sacks in excess of one gallon, and aggregating eight gallons.    And that "some one said something about some fellow running off through the woods, had on some sort of soldier's uniform, something said about that."

Thereupon the Commonwealth rested and the accused proceeded to introduce the testimony of himself, and of the said Dean, in defense.

The testimony, both of the accused and of Dean, was to the effect that neither they nor Lipps had anything to do with the bringing of the sacks of whiskey to the place in the woods where they were found sitting beside the sacks.    That all three of them were coming along the path up the mountain, without any whiskey with them, when just before they reached the top of the mountain they saw "a glimpse" of one or two unknown men, they couldn't tell whether one or two, running through the brush, wearing what looked like an "officer's cap," or "soldier's cap;" and that the accused and his companions then came up to and found the sacks sitting there and sat down beside them, as they were found sitting by the officer who arrested them, but did not even examine the sacks or know what the sacks contained; thought it was whiskey but did not drink any of it.    Thereupon the defense rested.

Whereupon the Commonwealth, over the objection of the accused, was permitted by the court to introduce the said Lipps as a witness in rebuttal, who testified, in substance, that the three, the accused, Dean and him-

self, carried the whiskey to the place at which they were arrested, as aforesaid, each carrying a portion of it, and had set down to rest, when the officer came upon and arrested them; that as they approached the top of the mountain they did see "a fellow run about one hundred to two hundred yards over the bank—seen Eb Mullins run, didn't know for sure at the time it was him, but found out afterwards it was him that run;" that Mullins had on an army overcoat and an army cap; that Mullins, however, had nothing to do with the transportation of the aforesaid whiskey that he knew of; that no whiskey was there at the place of the arrest except what was brought there by the accused, Dean and the witness; that what the accused and Dean testified to, to the effect that they didn't know anything about the liquor except that they found it sitting there, after seeing some one run away, was a lie, which the accused, Dean, and the witness concocted and agreed among themselves, after their arrest and before they employed counsel to defend them, to tell to their counsel and all others; that the witness did this, giving this account of the matter to his counsel and to others, and adhered to this story until after the Commonwealth had rested in its introduction of evidence on the trial of the accused; that he thereafter, during the trial, had a talk with the attorney for the Commonwealth, who told the witness that he would not be prosecuted if he told the truth, and that thereupon witness took the witness stand in rebuttal and testified as he did.

Whereupon it was not claimed before the trial court that the accused was taken by surprise, and no motion in behalf of the accused was made for any delay of the trial of the case, to enable the accused to obtain other witnesses to impeach the credibility of the witness Lipps, by showing his general reputation for truth and

veracity, or otherwise; but both the accused and Dean were recalled to the witness stand and testified, absolutely denying the conspiracy to tell the lie to which Lipps testified, denying the truth of Lipps' testimony and adhering to their former testimony.

*Kilgore & Dotson,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The decision of the whole case upon appeal turns upon the following question:

1. Did the trial court err in admitting the testimony of Lipps, one of the companions of, and found along with, the accused in possession of the liquor at the time of their arrest, as evidence in rebuttal?

The question must be answered in the negative for two reasons:

[1, 2] First:    The evidence introduced by the Commonwealth in chief was sufficient to make a *prima facie* case against the accused upon the charge of transportation of liquor.    It was not until the defense in reply introduced evidence tending to overturn such *prima facie* case that the Commonwealth had any need to introduce any further testimony.    And the testimony of Lipps then introduced went merely to controvert the truth of the testimony which had been introduced by the accused.    It did not go beyond the scope of that testimony.    Therefore, the testimony of Lipps, to the effect that accused in fact transported a portion of the

liquor, and that the story accused and Dean told on the witness stand was a fabrication, which the witness, the accused, and Dean had agreed upon prior to the trial, was, according to the customary and regular rule of procedure, properly admissible in evidence in rebuttal. Wigmore on Ev., secs. 1866-A, 1873 (3), 1873 (4), 2485 and 2486.

[3] Secondly: At the time the Commonwealth rested, it did not know it could obtain the testimony of Lipps. Up to that time he had steadfastly adhered to the same statements which he and the accused and their companion, Dean, had theretofore made; and it was not until the accused had entered upon the introduction of evidence in defense that the Commonwealth was informed by Lipps that such statements had been concocted, and that he would no longer adhere to them, but would testify to the truth, which, as he then admitted for the first time, would be to the effect that said statements were false and concocted, as aforesaid, and that the accused, the witness and Dean were all guilty of the transportation of the liquor. Such being the circumstances, the testimony of Lipps was properly admissible at the stage of the trial at which it was introduced.

[4] If the accused was taken by surprise by the testimony of Lipps being admitted at that stage of the trial, and had reasonable expectation of obtaining other witnesses to discredit the testimony of Lipps, that position should have been taken before the trial court and a reasonable delay of the trial asked for such purpose. But that course was not taken. The accused contented himself with adducing the testimony of himself and Dean in denial of the truth of the testimony of Lipps and the verdict of the jury stamped their approval upon the testimony of the latter. Therefore, under the well-

settled rule on the subject, Lipps' testimony must be taken to have been true, and, as it was properly admitted in evidence, the case must be affirmed.

*Affirmed.*